United States District Court
Southern District of Texas

**ENTERED**

January 06, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CYNTHIA MARIE BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-1765 |
| | § | |
| KATY INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending is Defendant Katy Independent School District's Motion for Summary Judgment (Document No. 27). Plaintiff has not filed a response and, in accordance with Local Rule 7.4, the motion is deemed unopposed.[1] After carefully considering the motion, the uncontroverted evidence, and the applicable law, the Court concludes that the motion should be granted.

I. Background

Defendant Katy Independent School District ("Defendant" or "Katy ISD") in August 2011 employed Plaintiff Cynthia Marie Brown

---

[1] Plaintiff, who was initially represented but is now *pro se*, filed a number of documents entitled "Dispositive and Non-Dispositive Motions" (Document No. 29), but with no accompanying motion, response, or explanations. Because the documents have no context or explanation, and are not authenticated, they do not assist the Court. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Adams v. Travelers Indem. Co. of Conn., 465 F.3d 156, 164 (5th Cir. 2006).

("Plaintiff"), a black woman, as a Licensed Vocational Nurse ("LVN") to manage the Mayde Creek Elementary School (the "Elementary School") clinic.[2]   After she was terminated in June 2013, Plaintiff filed this suit for damages alleging Title VII violations, constitutional violations, and breach of contract.   The principal events preceding Plaintiff's discharge are summarized from the summary judgment evidence as follows:

Katy ISD nurses typically receive one unannounced clinic audit per school year, but Plaintiff's supervisors visited and audited her performance multiple times during her second year at the Elementary School.[3]   The first unannounced clinic audit for the 2012-2013 school year took place on November 7 with a follow-up audit on November 30.[4]   Ellen McHale, RN, conducted these audits and made detailed notes documenting her concerns, which included "outdated or inaccurate health information on students, Ms. Brown's ability to interpret health information and manage immunization compliance, not keeping the substitute notebook and individual health folders current and completed, and overall mismanagement of

---

[2] Document No. 27, ex. B ¶ 4.   Management of a nurse's clinic is typically a task assigned to a Registered Nurse ("RN"), but due to budget constraints, Katy ISD filled a number of RN positions with LVNs.   Id., ex. B ¶¶ 2-3.

[3] Id., ex. B ¶ 4; id., ex. A 77:15-17.

[4] Id., ex. B-1 at 8 of 60.

the clinic."[5]  Becky Palmer ("Palmer"), Plaintiff's Supervising RN,[6] also visited the clinic during November and December and documented similar concerns.[7]

On December 13, 2012, a parent's complaint was received accusing Plaintiff of "grabbing her child's hand hard to make him sit down in the clinic."[8]  Defendant's Human Resources Coordinator, Lisa Moore, investigated the complaint.[9]  Lisa Moore spoke with the school counselor, who reported that the parent described the nurse as "a black lady,"[10] and then interviewed Plaintiff and her clinic aide, Mary Elizabeth Phelan ("Phelan").[11]  Plaintiff and Phelan repeatedly denied touching the student.[12]  Subsequently, Lisa Moore interviewed the student, whose description of the lady seemed to Moore to be consistent with Plaintiff's appearance.[13]  Lisa Moore

---

[5] Id., ex. B ¶ 6.

[6] Carol Moore explains in her Declaration that although "RNs work independently in many areas, LVNs must work under the supervision of an RN or physician." Id., ex. B ¶ 2.

[7] Id., ex. B-1 at 10 of 60 to 11 of 60.

[8] Id., ex. C-1 at 5 of 25.

[9] Id., ex. C ¶¶ 1-2.

[10] Id., ex. C-1 at 8 of 25.  The school counselor received the complaint from the parent due to the fact that the parent's primary language was Spanish.  Id., ex. C-1 at 6 of 25.

[11] Id., ex. C-1 at 8 of 25.

[12] Id., ex. C-1 at 8 of 25 to 14 of 25.

[13] Id., ex. C-1 at 14 of 25; id., ex. C ¶ 3.

again spoke with Plaintiff and Phelan, who continued to deny that they touched the student.[14]   However, "[b]ased on the student's positive identification of Ms. Brown," Moore concluded that the complaint had been substantiated,[15] and Principal Karen Raymond ("Principal Raymond") issued Plaintiff a counseling report.[16]

"Due to mounting concerns regarding Ms. Brown's performance," on January 9, 2013, Plaintiff was put on an Intervention Plan,[17] after which Palmer visited Plaintiff five times within the ensuing four weeks to assess Plaintiff's progress on the plan.[18]   According to Palmer's notes, Palmer repeatedly had to review certain issues with Plaintiff on each of her visits, and listed numerous deficiencies found with respect to clinic management.[19]

Carol Moore, Director of Health Services,[20] conducted a third audit and follow-up on the Intervention Plan on February 13, 2013 and documented the following areas of concern, many of which had previously been brought to Plaintiff's attention:

---

[14] Id., ex. C-1 at 14 of 25.

[15] Id., ex. C ¶ 6; id., ex. C-5.

[16] Id., ex. C-4.

[17] Id., ex. B ¶ 8; id., ex. B-2.

[18] Id., ex. B ¶ 9.

[19] Id., ex. B-3.

[20] As Director of Health Services, Carol Moore "either directly or indirectly supervise[s] all of the health care workers in the District." Id., ex. B ¶ 1.

- Maintenance of accurate, current, and complete health records on each student.
- Adherence to Texas Department of State Health Services immunization laws, secure records on each student, update as necessary, and follow-up information.
- Compliance with Medicaid billing.
- Communication and report of communicable disease status on campus, and documentation according to Health Services guidelines.
- Ability to be self-directed, manage clinic responsibilities, and communicate in a positive and nonjudgmental manner.
- Difficulty with general computer skills and utilizing computer reports.
- Difficulty with multi-tasking and prioritizing, skills that are essential when functioning as a stand-alone medical provider in a school setting.
- Inconsistency in the ability to quickly assess clinical interactions and determine with confidence whether a nursing intervention versus a medical referral is necessary.[21]

Later in February, Plaintiff attended a mandatory in-service about gang violence during which James Odom ("Odom"),[22] a guest speaker, showed a video clip involving gang members and gang activity.[23] Plaintiff testified that as part of his presentation, Odom four times repeated the "N-word" that had been used by

---

[21] <u>Id.</u>, ex. B ¶ 10; *see also* <u>id.</u>, ex. B-4.

[22] Odom was not an employee of Katy ISD, nor has he again been retained as a guest speaker since the mandatory in-service.  <u>Id.</u>, ex. B ¶ 16.

[23] <u>Id.</u>

person(s) filmed in the video.[24]  After the in-service, Plaintiff sent an email to Carol Moore stating that she "felt quite insulted how the N-word rolled out of [Odom's] mouth like melted butter."[25] Upon receiving this complaint, Carol Moore, who did not remember Odom using the word, spoke with several nurses and staff members who attended the in-service, none of whom recalled Odom using the word.[26]  Carol Moore ultimately concluded that only the gang members portrayed in the video clip used the word and informed Plaintiff of her conclusion.[27]  According to Carol Moore, other than this complaint, Plaintiff "never claimed that any [Katy ISD] employee used racially-insensitive language to or around her," and Plaintiff when asked in her deposition did not describe any other such incident.[28]

Palmer visited Plaintiff again in late March, where she again documented concerns regarding medication and clinic management, and found Plaintiff uninformed on specialized procedures pertaining to a diabetic child going on a first-grade field trip, along with a failure to study the screenings section of the Health Services

---

[24] <u>Id.</u>, ex. A 52:15-22; 155:9-10.  Plaintiff testified that she "didn't understand why he had to repeat that."  <u>Id.</u>, ex. A 52:20-22.

[25] <u>Id.</u>, ex. B-10.

[26] <u>Id.</u>, ex. B ¶ 16.

[27] <u>Id.</u>

[28] <u>Id.</u>; <u>id.</u>, ex. A.

Handbook, which Plaintiff had been asked to do.[29]  Carol Moore addressed these and numerous other concerns in a meeting with Plaintiff and Principal Raymond held April 1, 2013.[30]  Plaintiff was issued a second Counseling Report and informed that her "actions could affect her employment."[31]

In May, Palmer wrote an extensive report documenting Plaintiff's performance and inadequate progress over the school year.[32]  Palmer concluded with her "overview," as follows:

> Overall, I have many concerns regarding Cynthia in the Campus Nurse role within KATY ISD.  She required both an initial and secondary 'follow-up' Clinic Audits last year and this year.  Many of the areas in which she has been deficient this year were also addressed repeatedly last year, by a different RN Supervisor.  I made 23 clinic visits to Cynthia this school year.  My other returning LVNs received an average of 11 visits.  My new LVNs had on an average 20 visits.  Many of the topics I have needed to address have required me reviewing them more than once.[33]

Principal Raymond, Plaintiff's supervisor, wrote a formal performance evaluation in which he graded Plaintiff with an overall score of "2," which means "Performs Below Expectations--Improvement

---

[29] Id., ex. B-5

[30] Id., ex. B ¶ 12.

[31] Id., ex. B-6.

[32] Id., ex. B-8.

[33] Id.

needed in Specific Areas."[34]   After concluding that Plaintiff's performance was not going to improve, Carol Moore and Principal Raymond terminated Plaintiff's employment "based entirely on her well-documented performance issues, including her clinic management problems."[35]   Plaintiff denies that these evaluations accurately portrayed her performance and testified that she believes they are "false,"[36] "a cover-up,"[37] or a "pretext."[38]

After receiving her right-to-sue letter, Plaintiff filed suit against her former employer alleging race discrimination, hostile work environment, harassment, and retaliation under Title VII, violation of procedural due process under the Fifth and Fourteenth Amendments, and breach of contract.[39]   Defendant denies that it

---

[34] _Id._, ex. B-9.

[35] _Id._, ex. B ¶ 14.

[36] _Id._, ex. A at 73:5, 76:7, 87:4, 112:21, 159:7-12, 172:5-10, 186:18-24.

[37] _Id._, ex. A at 120:2-7, 123:5-13,

[38] _Id._, ex. A at 72:25-73:5, 76:12, 83:11, 84:1, 123:5-13, 181:2-5.  For example, in her deposition, Plaintiff was asked what they were retaliating against her for in November of 2012, to which she responded:  "A pretext in terminating, made up excuses, false accusations, lies, anything that they could make up to present as if I was insufficient, as if I was disorganized and irresponsible, anything they can write on a piece of paper." _Id._, ex. A at 76:18-24.

[39] Document No. 1 (Orig. Compl.).  Plaintiff's Original Complaint also contains claims for intentional infliction of emotional distress and punitive damages; however, these claims were dismissed by Order signed October 15, 2014.  Document No. 4.

discriminated against or violated Plaintiff's rights in any manner and moves for summary judgment on all of Plaintiff's claims.[40]

## II. Legal Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted.  Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1).

---

[40] Document No. 27.

"The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

A motion for summary judgment "cannot be granted simply because there is no opposition." Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 362 n.3 (5th Cir. 1995). When no response is filed, however, the Court may accept as undisputed the facts set forth in support of the motion and grant summary judgment when a *prima facie* showing for entitlement to judgment is made. *See* Eversley v. MBank

10

Dallas, 843 F.2d 172, 174 (5th Cir. 1988); Rayha v. United Parcel
Serv., Inc., 940 F. Supp. 1066, 1068 (S.D. Tex. 1996).

### III. Analysis

Defendant argues that because Plaintiff was an at-will
employee with no contract to breach and because she "cannot show
that it was her race or protected activity that motivated her
termination, as opposed to her performance issues and the incident
with the child, her lawsuit must fail."[41]

### A.   Breach of Contract and Procedural Due Process

Plaintiff alleges that she was under a contract of employment,
which Defendant breached "by failing to follow its own disciplinary
policy, investigation, promotion policy, and . . . harassment
policy," and "by wrongfully discharging Plaintiff."[42]   Defendant
argues that Plaintiff was "an at-will employee and had no written,
oral, or implied contract with the District."[43]

Under Texas law, employment is presumed to be at-will.
Montgomery Cty. Hosp. Dist. v. Brown, 965 S.W.2d 501, 502 (Tex.

---

[41] Document No. 27 at 14 of 34 to 15 of 34.

[42] Document No. 1 at 8 of 13 to 9 of 13.

[43] Document No. 27 at 15 of 34.  Although it is undisputed that
Plaintiff signed a document, which Plaintiff describes as an
employment contract and Defendant argues was a non-binding letter
of reasonable assurance, there is no such document included in the
summary judgment evidence.  See id.; id., ex. A 30:23-31:21.

11

1998).   "A discharged employee who asserts that the parties have contractually agreed to limit the employer's right to terminate the employee-at-will has the burden of proving an express agreement or written representation to that effect."   Massey v. Hou. Baptist Univ., 902 S.W.2d 81, 83 (Tex. App.--Houston [1st Dist.] 1995, writ denied) (quoting Lee-Wright, Inc. v. Hall, 840 S.W.2d 572, 577 (Tex. App.--Houston [1st Dist.] 1992, no writ)).   "To rebut the presumption of employment at will, an employment contract must directly limit in a 'meaningful and special way' the employer's right to terminate the employee without cause."   Hamilton v. Seque Software Inc., 232 F.3d 473, 478 (5th Cir. 2000) (quoting Rios v. Tex. Commerce Bancshares, Inc., 930 S.W.2d 809, 815 (Tex. App.--Corpus Christi 1996, writ denied)).

Plaintiff's deposition testimony is the only proof alluding to a claimed employment contract with Katy ISD:

> Q.   Is it the same -- is it the same contract that applies to all the employees of Katy SD?
> A.   [Plaintiff Brown] All the teachers get a contract. All the nurse, the nurse assistants, get a contract to renew for the following year.
> Q.   And is the language identical in all of those contracts?
> A.   It's -- well, I don't -- I don't recall looking at anyone else's contract.  So it's very brief. Simply worded: Did you wish to continue working for the following year? You sign and you date it and then you turn it into the principal.
> Q.   Is there any other language that you recall in that contract?
> A.   I don't recall, other than by signing here you are, you know, saying that you want to work the following year.

```
Q.   Is that all you are signing for in that contract?
A.   Yes, it's one page.
Q.   So it's your agreement to work for the following
     school year?
A.   Correct.[44]
```

Viewing the evidence in the light most favorable to Plaintiff, the document she signed and described in her deposition is not a binding employment contract under Texas law because it is not shown to have contained any limitation upon Defendant's right to terminate Plaintiff's employment at any time. *See* Brown, 965 S.W.2d at 502 (holding that for an employment contract to exist, "the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances"). Accordingly, Plaintiff fails to overcome the presumption of at-will employment or to establish the existence of an employment contract, and Defendant is entitled to summary judgment on Plaintiff's breach of contract claim.

Plaintiff's procedural due process claim also fails inasmuch as Plaintiff has failed to establish a contractual right to employment sufficient to create a property interest entitled to protection under the Fifth and Fourteenth Amendments.[45] "In order to allege a due process deprivation of a property interest under the Fourteenth Amendment, the plaintiff must demonstrate a

---

[44] Id., ex. A 30:23-31:21.

[45] *See* Document No. 1 at 2 of 13.

13

'legitimate claim of entitlement' to that interest." <u>Nunez v.</u>
<u>Simms</u>, 341 F.3d 385, 387 (5th Cir. 2003) (quoting <u>Bd. of Regents of</u>
<u>State Colls. v. Roth</u>, 92 S. Ct. 2701, 2709 (1972)).  Plaintiff
makes no such demonstration here.  Accordingly, Defendant is
entitled to summary judgment on Plaintiff's procedural due process
claim.

B.   <u>Title VII</u>

Plaintiff alleges that Defendant participated in unlawful
employment practices, including race discrimination, retaliation,
and creating a hostile working environment, in violation of Title
VII of the Civil Rights Act of 1964, as amended.[46]  Defendant denies
that it discriminated, harassed, or retaliated against Plaintiff in
any manner.[47]

1.   Race Discrimination

Title VII makes it unlawful to discharge an employee because
of that individual's race.  42 U.S.C. § 2000e-2(a)(1).  Under the

---

[46] Document No. 1.  Plaintiff also refers to Chapter 21 of the
Texas Labor Code, the Texas Commission on Human Rights Act
("TCHRA"), as the basis for her employment discrimination claims.
<u>Id.</u> at 2 of 13.  TCHRA is modeled on Title VII, and is interpreted
in the same manner.  <u>Mission Consol. Indep. Sch. Dist. v. Garcia</u>,
372 S.W.3d 629, 633-34 (Tex. 2012).  Therefore, to the extent that
Plaintiff is claiming a violation of TCHRA, the same Title VII
analysis and conclusion apply.

[47] Document No. 27 at 8 of 34.

modified <u>McDonnell Douglas</u> burden-shifting approach applied in Title VII cases, Plaintiff must first establish a *prima facie* case of discrimination. <u>Vaughn v. Woodforest Bank</u>, 665 F.3d 632, 636 (5th Cir. 2011) (citing <u>Davis v. Dall. Area Rapid Transit</u>, 383 F.3d 309, 317 (5th Cir. 2004)); *see also* <u>McDonnell Douglas Corp. v. Green</u>, 93 S. Ct. 1817 (1973). If Plaintiff does so, Defendant must then articulate a legitimate, non-discriminatory reason for terminating Plaintiff's employment. <u>Vaughn</u>, 665 F.3d at 636. If the employer sustains its burden of production, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to "offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." <u>Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.</u>, 482 F.3d 408, 411-12 (5th Cir. 2007).

Defendant concedes for the purpose of this motion that Plaintiff established a *prima facie* case with respect to her termination.[48] Defendant cites Plaintiff's "poor clinic management" as its legitimate, non-discriminatory reason for terminating

---

[48] <u>Id.</u> at 18 of 34. To establish a *prima facie* case, "a plaintiff must first establish a prima facie case of discrimination by showing: (1) he belongs to a protected group; (2) he was qualified for the position sought; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class." <u>Price v. Fed. Exp. Corp.</u>, 283 F.3d 715, 720 (5th Cir. 2002).

Plaintiff.[49]  Defendant's proof includes declarations from Katy ISD
employees, including Carol Moore, Director of Health Services, and
Lisa Moore, a Human Resources Coordinator.[50]  Defendant also
produces evidence documenting Plaintiff's supervisors' concerns
about her performance and progress throughout the school year,
including formal audits, notes from clinic visits, an Intervention
Plan, Counseling Reports, and Plaintiff's performance evaluation
for the 2012-2013 school year.[51]  Defendant's evidence establishes
a legitimate, non-discriminatory reason for its discharge of
Plaintiff.  *See* <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 120 S.
Ct. 2097, 2106 (2000) (noting that the burden on the employer is
"one of production, not persuasion").

The burden, therefore, shifts back to Plaintiff to provide
evidence of pretext.  "[T]o defeat a competent motion for summary
judgment, the claimant must submit evidence that is sufficient to
allow a rational fact finder to conclude that the employer's action
was based on discrimination." <u>Matthews v. City of Hou. Fire Dep't</u>,
609 F. Supp. 2d 631, 644 (S.D. Tex. 2009) (Rosenthal, J).
"'[C]onclusory allegations, speculation, and unsubstantiated
assertions are inadequate to satisfy' the nonmovant's burden in a
motion for summary judgment." <u>Ramsey v. Henderson</u>, 286 F.3d 264,

---

[49] Document No. 27 at 19 of 34.

[50] <u>Id.</u>; <u>id.</u>, ex. B.

[51] <u>Id.</u>, exs. B-1 to B-9.

269 (5th Cir. 2002) (quoting <u>Douglass v. United Servs. Auto. Ass'n</u>,

79 F.3d 1415, 1429 (5th Cir. 1996)).

When asked about certain entries in Palmer's notes and Ellen

McHale, RN's critical audit report, reciting what Plaintiff stated,

or did, or did not do in the clinic, Plaintiff testified such were

"example[s] of pretext discrimination" because they misrepresent

the work Plaintiff completed.[52]   When asked specifically how

Palmer's clinic visit notes, for example, were based on her race,

Plaintiff responded that

> I believe it was part of a plan since the incident that
> I was accused of pulling the child's arm, from higher up,
> word was out to get rid of me because they didn't believe
> that I didn't harm the child.  I believe the principal of
> the school, as well as Lisa Moore in human resources, was
> given word from higher up to get rid of me because they
> did not believe me.  They were just pulling anything out
> of their hats they possibly could, because in fact she
> told me she didn't believe me, that I was lying, and that
> I harmed the child.[53]

When asked about Palmer's notes describing her follow-up clinical

visits with Plaintiff specifically on December 11 and 13, 2012,

Plaintiff testified that "It's a pretext to expedite termination

because of all the duties here and all the falsifications, they are

saying things that were completing things that were not complete,

---

[52] <u>Id.</u>, ex. A 72:24-74:25.

[53] <u>Id.</u>, ex. A 131:24-132:17.

17

which were completed."[54] These and others of Plaintiff's conclusory allegations, however, provide no evidence to allow a reasonable fact-finder to conclude that her termination was based on her race or that race was a motivating factor. *See* Price, 283 F.3d at 720 (Plaintiff must "demonstrat[e] that discrimination lay at the heart of [Defendant's] decision"); Auguster v. Vermilion Par. Sch. Bd., 249 F.3d 400, 403 (5th Cir. 2001) ("Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient. This court has consistently held that an employee's subjective belief of discrimination alone is not sufficient to warrant judicial relief.") (internal quotations omitted). Plaintiff's testimony is insufficient to raise a genuine issue of material fact that race was a motivating factor for her termination.

Pretext may also be demonstrated by more favorable treatment of similarly situated employees, provided that "any of the employment actions 'were taken under nearly identical circumstances[,]' including that [Plaintiff] and the other employees shared the same job or responsibilities, reported to the same supervisor, had 'essentially comparable violation histories[,]' and, most importantly, that the 'conduct that drew the adverse employment decision [was] nearly identical.'"

---

[54] Id., ex. A 83:8-15.

Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 659 (5th Cir. 2012) (quoting Lee v. Kan. City S. Ry. Co., 574 F.3d 253, 260 (5th Cir. 2009)) (alterations in original).

Plaintiff testified that "nurses of other ethnic back-ground[s]"[55] and "all of them that were Caucasian" were treated more favorably because they received fewer audits than she did.[56]  When asked for a specific name, Plaintiff testified that Kathryn Brannan ("Brannan"), a Caucasian RN at Mayde Creek Junior High, was similarly situated and treated more favorably because Brannan did not receive as many audits as Plaintiff, Brannan was not falsely accused of harming a child, and Brannan's supervisors did not lie about her actions.[57]  However, Plaintiff has not established that Brannan was similarly situated and a proper comparator.  The uncontroverted summary judgment evidence shows that Brannan was an RN, not an LVN, and, according to Carol Moore's uncontroverted Declaration, there are significant differences in job responsi-bilities between an RN and an LVN:  "While RNs and LVNs have similar duties in caring for patients, there are differences related to critical thinking skills, care planning, nursing scope of practice, education, and overall responsibilities.  RNs work independently in may areas, while LVNs must work under the

---

[55] Id., ex. A 77:13.

[56] Id., ex. A 109:17-21.

[57] Id., ex. A 110:20-112:15.

supervision of an RN or physician."[58]  Moreover, Brannan worked for Katy ISD for nine years without any major performance concerns, which is distinguishable from Plaintiff's well-documented struggles with clinic management.[59]  *See* <u>Lee</u>, 574 F.3d at 260 ("If the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis.'") (quoting <u>Wallace v. Methodist Hosp. Sys.</u>, 271 F.3d 212, 221 (5th Cir. 2001)).

Plaintiff's race discrimination claim fails as a matter of law inasmuch as she has provided no summary judgment evidence from which a rational trier of fact could conclude that Defendant's reason for terminating Plaintiff was pretextual and that the real reason was because of her race.

2.   Retaliation

To state a *prima facie* case of retaliation, Plaintiff must establish that:  (1) she participated in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action.  <u>Hernandez</u>, 670 F.3d at 657.

---

[58] <u>Id.</u>, ex. B ¶ 2.

[59] <u>Id.</u>, ex. B ¶ 17.

Whether something is an adverse employment action "will often depend on the particular circumstances. Context matters." Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006).

Plaintiff alleges that Katy ISD "instituted a campaign of retaliation . . . due to Plaintiff exercising her rights by filing an internal email complaint of the repeated use of the N-word, grievances, and charges."[60]  The protected activity Plaintiff refers to is an email she sent on February 19, 2013, complaining about Odom's use of the "N-word" at a mandatory in-service.[61]

Plaintiff alleges that the retaliatory adverse actions taken against her as a result of her email complaint included numerous unannounced clinic audits, falsely accusing Plaintiff of pulling a student's arm, firing Plaintiff, and failing to renew her contract.[62]  The uncontroverted summary judgment evidence establishes, however, that most of the audits as well as the incident with the child all occurred *before* Plaintiff engaged in her protected activity by sending the email on February 19, 2013.[63]

---

[60] Document No. 1 ¶ 13.

[61] Document No. 27, ex. B-10.

[62] Document No. 1 ¶ 13.

[63] The arm-pulling incident was reported in December 2012, and Lisa Moore's investigation concluded on January 8, 2013. Document No. 27, exs. C, C-1.  Before Plaintiff emailed her complaint, Plaintiff's supervisors audited her three times, visited her clinic several times, and placed her on an Intervention Plan. Id., ex. B.

As a matter of law, therefore, those audits and the investigation about the child's complaint did not constitute Title VII retaliation. *See* <u>Univ. of Tex. Sw. Med. Ctr. v. Nassar</u>, 133 S. Ct. 2517, 2534 (2013) (explaining a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer"). Moreover, the subsequent audits *after* Plaintiff engaged in her protected activity do not form the basis for a retaliation claim because Plaintiff already had a history of performance deficiencies and had been put on an Intervention Plan for improvement well before she sent her email complaint. *See* <u>Jackson v. Honeywell Int'l, Inc.</u>, 601 F. App'x 280, 286 (5th Cir. 2015) ("written warnings and unfavorable performance reviews are not adverse employment actions where colorable grounds exist for disciplinary action").

Finally, Defendant argues that Plaintiff's retaliation claim fails because she "is unable to show that a causal nexus exists between any protected activity in which she engaged and her termination."[64] The only evidence connecting Plaintiff's termination with the email complaint is the temporal proximity of approximately three months between the two events.[65] Temporal proximity alone, however, is not enough to establish but for

---

[64] Id. at 30 of 34.

[65] Plaintiff's complaint was sent on February 19, 2013. <u>Id.</u>, ex. B-10. Plaintiff's termination was effective June 6, 2013. <u>Id.</u>, ex. B ¶ 14.

causation. <u>Strong v. Univ. Healthcare Sys., L.L.C.</u>, 482 F.3d 802, 808 (5th Cir. 2007).   Therefore, even if Plaintiff's termination was close enough in time to establish her *prima facie* case, Plaintiff's retaliation claim fails because she did not "demonstrate 'a conflict in substantial evidence on [the] ultimate issue' of 'but for' causation." <u>Hernandez</u>, 670 F.3d at 65 (quoting <u>Long v. Eastfield Coll.</u>, 88 F.3d 300, 308 (5th Cir. 1996)), and the uncontroverted summary judgment evidence shows that Plaintiff's termination was "based on the performance issues that had already been well-documented by the time she sent the email to [Carol] Moore in February 2013."[66]   Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

3.   Hostile Work Environment

To establish a hostile work environment claim, Plaintiff must show:  (1) she is a member of a protected group; (2) she was a victim of harassment; (3) the harassment was based on race; (4) the harassment affected a "term, condition, or privilege" of Plaintiff's employment; and (5) Defendant knew or should have known of the harassment and failed to take prompt remedial action. <u>Ramsey</u>, 286 F.3d at 268.   For race-based harassment to affect a "term, condition, or privilege" of employment, as required to support a claim for hostile work environment under Title VII, it

---

[66] <u>Id.</u> at 31 of 34.

must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Harris v. Forklift Sys. Inc.</u>, 114 S. Ct. 367, 370 (1993), *abrogated on other grounds by* <u>Burlington Ind., Inc. v. Ellerth</u>, 118 S. Ct. 2257 (1998). Courts look to the totality of the circumstances including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Id.</u> at 371.

Here, the only summary judgment evidence of any race-based comments or conduct are the comments attributed to Odom, the one-time guest speaker who conducted the in-service presentation on gang violence,[67] and who, according to Plaintiff, four times repeated the "N-word" that had been used by person(s) depicted in the video clip of gang members.[68] This isolated incident is not the kind of continuing severe or pervasive conduct that permits an inference that Plaintiff was subjected to a racially hostile work environment. *See* <u>Harris</u>, 114 S. Ct. at 370 ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—-an environment that a reasonable person

---

[67] <u>Id.</u>, ex. B ¶ 16.

[68] <u>Id.</u>

24

would find hostile or abusive—is beyond Title VII's purview."). Defendant is entitled to summary judgment on this claim.[69]

## IV. Order

For the foregoing reasons, it is

ORDERED that Defendant Katy Independent School District's Motion for Summary Judgment (Document No. 27) is GRANTED and Plaintiff Cynthia Marie Brown's claims are dismissed with prejudice.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas on this 6th day of January, 2016.

_Ewing Werlein, Jr._

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

---

[69] Also, upon receiving Plaintiff's complaint about the incident, Carol Moore immediately began investigating by inquiring of other attendees whether Odom had used the "N-word." Because Defendant promptly acted to investigate Plaintiff's complaint of offensive conduct, a prelude for any needed remedial action, Plaintiff's hostile work environment claim fails as a matter of law.